IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00835-RBJ

CURTIS DEE PACKARD,

    Applicant,

v.

BARRY GOODRICH, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) (the "Application") filed *pro se* by Applicant, Curtis Dee Packard, on April 4, 2017. Mr. Packard challenges the validity of his convictions in Larimer County, Colorado, District Court case number 2010CR1780. Respondents have filed an Answer (ECF No. 21) and Mr. Packard has filed Applicant's Traverse to Respondents' Answer (ECF No. 22) ("the Traverse"). After reviewing the entire record before the Court, including the Application, the Answer, the Traverse, and the state court record, the Court FINDS and CONCLUDES that the Application should be denied and the case dismissed with prejudice.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. Packard was convicted by a jury on three counts of theft and four counts of securities fraud. He originally was sentenced to forty years in prison but that sentence later was reduced to twenty-one years.

> The victim and Packard met in Utah and soon became friends. Packard asked the victim to finance a building project. The victim agreed and was pleased with the success of the business partnership. The two experienced even more success, building six houses in Utah.
>
> Based on the success of these investments, the victim trusted Packard. Packard proposed a larger-scale home-building project in Fort Collins, Colorado. In order to finance this project, the victim gave Packard $7 million to buy development property. Packard also proposed expanding into the motorcycle engine business, so the victim guaranteed $1.4 million of bank loans for the start-up capital.
>
> The victim eventually discovered that Packard was not making loan payments, so the victim began making the payments. He then discovered that the interest he thought he had in the investment property did not exist. Packard did not use the $7 million to purchase any development property.
>
> The jury found that Packard's actions constituted the sale of securities, leading to the charges in this case.

(ECF No. 10-1 at 2-3) (*People v. Packard*, No. 14CA0067 (Colo. App. Oct. 29, 2015) (unpublished)). The judgment of conviction was affirmed on direct appeal. (*See id.*) On April 18, 2016, the Colorado Supreme Court denied Mr. Packard's petition for writ of certiorari on direct appeal. (*See* ECF No. 10-2.)

Mr. Packard asserts three claims for relief. He first claims his Sixth Amendment right to counsel was violated when the trial court allowed the public defender to withdraw without making specific findings to support withdrawal. He contends in claim two that his constitutional rights were violated because the trial court failed to act sua sponte and appoint new counsel to represent him after the public defender was allowed to withdraw. In claim three Mr. Packard contends his constitutional right to confrontation was violated when the trial court permitted the prosecution to introduce the deposed testimony of an

available witness.

On May 23, 2017, the Court entered an Order to Dismiss in Part (ECF No. 13) and dismissed claim three because that claim is procedurally barred. On June 8, 2017, Mr. Packard filed Applicant's Objections to the Court's Order of Dismissal in Part (ECF No. 16). Mr. Packard argues in his objections that claim three should not be dismissed as procedurally barred. The Court construes the objections as a motion to reconsider, which the Court will deny because the Court remains convinced that claim three properly was dismissed as procedurally barred.

## II. STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Packard liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Packard bears the burden of proof under § 2254(d). *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Packard seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is

4

> commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407‑08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.

In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Packard bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

### III. MERITS OF APPLICANT'S REMAINING CLAIMS

**A.      Claim One**

Mr. Packard contends in claim one that his Sixth Amendment right to counsel was violated when the trial court allowed the public defender to withdraw without making specific findings to support withdrawal. Mr. Packard initially was represented by private counsel. After private counsel had withdrawn, Mr. Packard submitted to the office of the public defender an application for representation and a public defender entered an appearance in his case and stated on the record that Mr. Packard qualified for representation by the public defender. According to Mr. Packard, however, the public defender later moved to withdraw stating that Mr. Packard had not completed the application properly and the trial court granted the motion without inquiring whether Mr. Packard was indigent and without any change in his financial situation.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant to have counsel appointed for him at state expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963).

A defendant in a criminal proceeding also has a constitutional right to waive his right to counsel and to represent himself. *Faretta v. California*, 422 U.S. 806, 817 (1975). A waiver may take the form of an express statement relinquishing the right to counsel or, under certain circumstances, a waiver can be implied from the facts of the case. *See North Carolina v. Butler*, 441 U.S. 369 (1979). In order to be effective, a waiver of counsel must be knowing, voluntary, and intelligent. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Whether a waiver is knowing, voluntary, and intelligent "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). In the context of a criminal proceeding that goes to trial, warnings regarding the pitfalls of proceeding without counsel must be rigorously conveyed. *See Patterson v. Illinois*, 487 U.S. 285, 299 (1988). The issue of whether a waiver of the right to counsel is knowing, voluntary, and intelligent is a mixed question of law and fact. *See Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir. 1991). Finally, Mr. Packard bears the burden of proving that he did not competently and intelligently waive his right to the assistance of counsel. *See Tovar*, 541 U.S. at 92.

The Colorado Court of Appeals described in detail the factual circumstances that led to the public defender's entry of appearance and subsequent withdrawal.

> Packard was indicted in December of 2010. A privately retained attorney entered an appearance soon after but then withdrew on February 4, 2011. That same day, a second privately retained attorney entered an appearance but, in July, filed a motion with the court to withdraw because of an irreconcilable breakdown in the attorney-client relationship. The court granted the motion.
>
> The court was concerned about how long the case had been pending, so it held a status conference on July 26, 2011, to check on Packard's progress in hiring counsel. Packard still had not hired counsel, so the court continued the status conference. Packard appeared in court on August 12, August 26, and September 2 without counsel. On September 2, the court told Packard that it was concerned he had not been forthright about his attempts to hire counsel.
>
> Packard then applied for a public defender. An attorney from the local public defender's office was in court at the time, and he informed the court that Packard needed to
9

submit proof of indigency to complete his application. This proof included verification of who was paying Packard's rent.

On September 6, 2011, a public defender entered an appearance in Packard's case, believing that Packard's application was complete. This public defender soon discovered Packard still had not submitted proof of indigency. He told Packard "repeatedly" to provide proof, but Packard never did. *See* § 21-1-103(3), C.R.S. 2015 (stating that a public defender can only represent a defendant once that defendant has completed an application that proves indigency). Because Packard had not completed the application, the public defender moved to withdraw on January 13, 2012.

At a hearing in January to discuss the motion to withdraw, Packard said, "I mean, I don't object to him withdrawing." But, Packard also said that he wanted counsel and that he did not waive that right. The court explained Packard's options:

> [Packard], you certainly have the right to counsel. . . . [Y]ou will have an opportunity to bring in counsel in the meantime if you choose to do that and have someone enter an appearance, whether that is – we get verification from the Public Defender's Office or alternative counsel, that's fine. But you need to take action to bring an attorney to actually enter an appearance on your behalf if you're using private counsel. If you are using alternative defense counsel, then you need to complete the information that's required in terms of financial information in order for the Court to consider the appointment of alternative defense counsel.

The court held a hearing on March 6, 2012, and Packard appeared pro se. The court noted, "I know we had talked last time about the possibility of the Court potentially appointing alternative defense counsel if that was appropriate." Packard responded that he was going to represent himself because "[a]s far as [he] knew [he] wasn't qualified for any of that."

The court held a pretrial readiness conference on April 6, 2012, and Packard again appeared without counsel. He told the court his "pro se" status was not by his own choosing. The court responded that it was willing to appoint him counsel and "would entertain an application . . . for alternative defense counsel." The court stated at least four more times during the hearing that it would accept Packard's application for appointment of counsel. Packard said he would not submit such an application because he had already submitted one to the public defender in September 2011. He maintained that his rights had already been violated.

After Packard refused to submit an application for counsel, the court voiced its concerns with the case and advised Packard of his rights:

> I am concerned with the number of delays and the amount of time this has taken for you to obtain counsel, that the case is delayed, frankly beyond reason.
>
> Now, I understand, and you understand very clearly, sir, that you have the right to be represented by counsel throughout the proceedings. You understand that?

Packard stated that he understood.

The court held a hearing on June 12, 2012. On seeing that Packard was still unrepresented, the court told him that "criminal law is a complicated area and that an attorney trained in the field could be a great help in preparing and representing you in this case." Packard said that he understood, but he maintained that his right to counsel had been violated.

On June 18, 2012, the first day of trial, Packard still did not have counsel. So, the trial court gave him an *Arguello* advisement. *See People v. Arguello*, 772 P.2d 87 (Colo. 1989). At the conclusion of this advisement, the court found Packard impliedly waived his right to counsel based on his conduct. Although Packard did not fill out an application to show the court he was indigent, he persisted in his position

that the court erred in letting the public defender withdraw.

(ECF No. 10-1 at 4-8 (brackets in original).) The Colorado Court of Appeals then explained its reasons for rejecting Mr. Packard's right to counsel claim:

> A defendant must complete an application proving indigency for the public defender to represent him. § 21-1-103(3). Failure to complete an application may be considered a waiver of the defendant's right to counsel. *See King v. People*, 728 P.2d 1264, 1268 (Colo. 1986) (noting that not submitting an application is one factor to consider for waiver); *People v. Adams*, 836 P.2d 1045, 1047-48 (Colo. App. 1991) (stating the "initial burden to establish indigency in upon the defendant").
>
> To evaluate waiver of the right to counsel, the People and Packard disagree about the correct standard of review. On the one hand, the People contend that we should apply a de novo standard of review. On the other hand, Packard contends that the trial court's decision not to give him counsel should be reviewed for an abuse of discretion. We agree with the People because the issue here is whether Packard waived his right to counsel. *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006).
>
> We conclude Packard waived his right to counsel because the court gave him two years to retain private counsel and numerous opportunities to fill out an application proving indigency. *See King*, 728 P.2d at 1268; *see also People v. Schupper*, 2014 COA 80M, ¶ 52 ("[A]fter the trial court determined that defendant was not entitled to court-appointed counsel, defendant's appearance at the next hearing without securing private counsel was tantamount to a knowing, intelligent, and voluntary waiver of his right to counsel."); *Adams*, 836 P.2d at 1047-48 (affirming waiver of right to counsel based on the record confirming that "defendant was cognizant of and elected not to pursue the procedure for establishing a current need for free legal services [and] . . . does not controvert the court's statement on the record that he was advised of the risks of proceeding without counsel").
>
> Nevertheless, Packard contends that "[a] court must

> make specific findings to support a determination of
> non-indigency." See People v. Steinbeck, 186 P.3d 54, 59
> (Colo. App. 2007). But, that incorrectly assumes that the trial
> court ruled that Packard was non-indigent. And, it incorrectly
> assumes that the trial court had financial information to
> review.
>
> The trial court decided to not appoint counsel because
> Packard's application was incomplete.
>
> Because we conclude Packard waived his right to
> counsel, we also conclude the court did not violate his right to
> counsel in allowing the public defender to withdraw.

(ECF No. 10-1 at 8-10 (brackets in original).)

Mr. Packard does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. See House, 527 F.3d at 1018. His argument that the state courts had a duty to make a careful inquiry regarding his financial condition under clearly established state law does not demonstrate a violation of clearly established federal law. Therefore, he fails to demonstrate the state court's determination with respect to claim one was contrary to clearly established federal law under § 2254(d)(1).

Mr. Packard also fails to demonstrate that the state court's rejection of claim one was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). First, although Mr. Packard asserts that he did not refuse to submit an application for court-appointed counsel because he had submitted an application to the public defender's office in September 2011, he does not dispute the factual determination that he refused to submit a new application to the trial court after repeatedly being directed to do so. Second, the trial court did not make or rely on a

13

factual determination that Mr. Packard was non-indigent.  Instead, as the Colorado Court of Appeals found, the record demonstrates the trial court did not reach the question of indigency because Mr. Packard failed to submit a completed application to the court.

Finally, Mr. Packard fails to demonstrate the state court's rejection of claim one was based on an unreasonable application of clearly established federal law under § 2254(d)(1). "[A] defendant may waive his right to counsel by his conduct, particularly when that conduct consists of tactics designed to delay the proceedings." *United States v. Hughes*, 191 F.3d 1317, 1323 (10th Cir. 1999).  The record reveals that Mr. Packard knew he had a right to counsel, the trial court was willing to consider a renewed application for appointment of counsel, and Mr. Packard was advised about the perils of proceeding *pro se*.  In light of these circumstances, Mr. Packard fails to demonstrate it was unreasonable to conclude he waived his right to counsel by his persistent refusal to submit a renewed application for court-appointed counsel to the trial court.  Even assuming the initial application submitted to the public defender was complete, it is clear that Mr. Packard knowingly, voluntarily, and intelligently chose not to submit a renewed application to obtain court-appointed counsel despite repeated directions to do so. Ultimately, the Court finds that Mr. Packard is not entitled to relief under § 2254(d)(1) with respect to claim one because he fails to demonstrate the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

**B.   Claim Two**

Mr. Packard contends in claim two that his constitutional rights were violated

because the trial court failed to act sua sponte and appoint new counsel to represent him after the public defender was allowed to withdraw. According to Mr. Packard, "[u]pon receiving notification from [Mr. Packard] that he would not participate in the proceedings, the trial court had an obligation to appoint counsel in order to maintain the rigorous adversarial testing that is the norm of criminal proceedings." (ECF No. 1 at 21.)

The Colorado Court of Appeals rejected this claim for the following reasons:

> Relying on *Thomas v. Carroll*, 581 F.3d 118, 126 (3d Cir. 2009), Packard contends that he was "for all intents and purposes [absent]" from trial and, thus, the court should have provided him counsel sua sponte.
>
> To evaluate whether counsel should have been afforded Packard, Packard and the People again disagree on the standard of review. On the one hand, Packard argues that a court's duty to appoint counsel sua sponte is reviewed de novo. On the other hand, the People argue that the court's decision should be reviewed for plain error. We agree with the People because we are reviewing an unpreserved constitutional claim. *People v. Miller*, 113 P.3d 743, 748-49 (Colo. 2005). Packard concedes that the issue is unpreserved because he never asked for the court to appoint counsel sua sponte.
>
> "In Colorado, a defendant who elects to proceed pro se and waives the right to counsel does not have a constitutional right to advisory counsel." *Downey v. People*, 25 P.3d 1200, 1203 (Colo. 2001). Thus, we conclude there was no error, plain or otherwise, in the court not affording Packard trial counsel sua sponte.
>
> Packard's reliance on *Thomas* for the proposition that counsel should have been appointed to represent him, an unrepresented defendant who was "for all intents and purposes" absent, is misplaced. The defendant in *Thomas* was involuntarily removed from the courtroom during the trial. 581 F.3d at 126. In contrast, Packard was present in the courtroom.

15

(ECF No. 10-1 at 10-11 (brackets in original).)

Mr. Packard fails to demonstrate the state court's ruling with respect to claim two is based on an unreasonable determination of the facts under § 2254(d)(2). He also fails to demonstrate he is entitled to relief under § 2254(d)(1) because he fails to identify any clearly established federal law that requires a trial court to appoint counsel sua sponte after a defendant waives his right to counsel. As noted above, the absence of clearly established federal law ends the Court's inquiry under § 2254(d)(1). *See House*, 527 F.3d at 1018. Furthermore, it is readily apparent that federal law does not require appointment of counsel after a valid waiver of that right. Instead, clearly established federal law provides that a defendant in a criminal proceeding has a constitutional right to waive his right to counsel and represent himself. *See Faretta*, 422 U.S. at 817. The right recognized in *Faretta* would not exist if trial courts have an obligation to appoint counsel sua sponte when a defendant waives his right to counsel.

Finally, Mr. Packard's argument that the state court unreasonably failed to extend Supreme Court precedents regarding the right to counsel to circumstances when a defendant waives the right to counsel also does not justify relief under § 2254(d)(1). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

For these reasons, Mr. Packard is not entitled to relief with respect to claim two.

## IV. CONCLUSION

In summary, the Court finds that Mr. Packard is not entitled to relief on either of his remaining claims. Accordingly, it is

**ORDERED** that Applicant's Objections to the Court's Order of Dismissal in Part (ECF No. 16), which the Court construes as a motion to reconsider, is denied. It is further

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED September 1, 2017.

BY THE COURT:

R. BROOKE JACKSON
United States District Judge